AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Northern District of New York

U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**

JUN 02 2026

AT_____ O'CLOCK
John M. Domurad, Clerk - Plattsburgh

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | |
| Judith AUGUSTIN and Madeleine Na | ) | Case No.  8:26-PO-50 (GLF) |
| CHOULOUTTE, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.  On

or about the date(s) of May 31, 2026 in the county of Franklin in the Northern District of New York the defendants

violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1325(a)(1) | Entry Without Inspection. |

This criminal complaint is based on these facts:
See attached affidavit.

☒      Continued on the attached sheet.

*Andrew Kraengel* 6/1/2026   3:54PM
*Complainant's signature*

U.S. Border Patrol Agent Andrew L. Kraengel
*Printed name and title*

Attested to by the Affiant in accordance with Rule 4.1 of the Federal Rues of Criminal Procedure.

Date:   June 2, 2026

*Judge's signature*

City and State:   Plattsburgh, New York

Hon. Gary L. Favro, U.S. Magistrate Judge
*Printed name and title*

*United States of America v* **Judith Augustin et al.**

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Andrew L. Kraengel, hereby depose and state under penalty of perjury:

1.     I am a Border Patrol Agent (BPA) with the United States Department of Homeland Security (DHS), Bureau of Customs and Border Protection (CBP), United States Border Patrol (USBP) assigned to the Burke Border Patrol Station. I have been a law enforcement officer for CBP since 2011 beginning with the USBP as an Agent assigned to Ajo Station in Arizona.  In 2014, without a break in service I became a CBP Officer, assigned to the Buffalo, NY Port of Entry and later to the Massena, NY Port of Entry.  Without a break in service, in 2024, I reinstated with the USBP.

2.     My primary duty is to assist in the prevention of illicit trafficking of people and contraband between the official ports of entry. My authority to perform this mission is articulated in the Immigration and Nationality Act, sections 235 and 287, and Title 8 U.S.C. Section 1357. These bodies of law relate to, among other things, a Border Patrol Agent's authority to interrogate any alien or person believed to be an alien, and to make an arrest of any alien who is entering or attempting to enter the United States in violation of the immigration laws. To enforce these laws, I have received training at the Federal Law Enforcement Training Centers in Artesia, New Mexico & Glynco, Georgia in Law, Operations, Firearms, Driving Techniques, and Physical Techniques.

3.     This affidavit is based in part on information provided to me by others and from law enforcement and immigration databases.  It does not set forth all my knowledge about the investigation.

4.     I submit this affidavit in support of a criminal complaint charging defendants Judith AUGUSTIN and Madeleine Na CHOULOUTTE with violating 8 U.S.C. § 1325(a)(1), which prohibits any alien, that is, any person who is not a citizen or national of the United States, from entering or attempting to enter the United States "at any time and place other than as designated by immigration officers."

*United States of America v* **Judith Augustin et al.**

## PROBABLE CAUSE

5.      On May 31, 2026, at approximately 3:20 AM, Border Patrol Agents assigned to the Burke Border Patrol Station, while utilizing a service issued laptop, detected a blue crossover driving through the Burke Station's area of responsibility via electronic surveillance equipment. The crossover entered the town of Burke, NY on NY SR-11 at roughly 3:25 AM and turned north onto Jamison Line Rd, proceeding north towards the US/Canada International Border. This area of Burke is a rural farming community and is frequently used for smuggling activity due to its remoteness, limited vehicle traffic, and multiple points of egress. Agents are familiar with most of the residents in the area and this vehicle was not one known to be from the area, specifically not one seen travelling in the area during the early morning hours.

6.      Agents proceeded to the area and positioned their vehicles at three intersections with NY SR-11 where the crossover would likely exit the area. An unmarked K-9 unit traveled north on East Rd. which parallels Jamison Line Rd approximately one mile to the east. The agent was attempting to encounter the crossover on Trout River Rd, which runs perpendicular to East Rd, Jamison Line Rd, and Callahan Rd, which are the three most utilized roads in the area for smuggling activity. The agent encountered the crossover, which could now be identified as a blue Subaru Outback bearing MA license plates 6WJJ97, pulled to the side of the road completely blacked out, just west of Callahan Rd, on Trout River Rd.

7.      As the Agent drove toward the Subaru he spotted at least four individuals running north toward the border. The Outback then turned on its lights and proceeded west on Trout River Rd. The Agent then passed the Outback as it travelled west. After traveling about one mile, the Agent could no longer see the Outback and turned around to see if it had also turned around. The agent was able to catch up to the Outback as it was turning south onto Jamison Line Rd. Suspecting that the driver of the Outback may have picked up other individuals that had crossed the border travelling south, the agent alerted the agents positioned on NY SR-11 that the Outback was travelling south towards NY SR-11.

*United States of America v* **Judith Augustin et al.**

8.      When the Outback reached NY SR-11, the Agent positioned at the intersection pulled out behind the Outback as it turned east onto NY SR-11. Agents positioned at East Rd and NY SR-11, moved east and pulled to an elevated side of the road to illuminate the Outback as it passed by to see how many individuals were in the vehicle. This effort was unsuccessful, as the window tint on the back windows was too dark to see through. Agents could only see a front seat passenger. However, based on the suspicious activity on Trout River Rd. the early morning hour and the vehicle being from out of the area, agents activated their emergency lights and sirens and executed a vehicle stop, just east of the Chateaugay Bridge in Chateaugay, NY.

9.      Agents approached the vehicle, identifying themselves as U.S. Border Patrol, and could now clearly see that the Outback was occupied well beyond its safe operating capacity. There was one adult male in the front passenger seat and five female individuals in the backseat. Two of the females were sitting on the laps of the other three. One of the females sitting on laps was an 11-year-old. Agents asked the driver to roll the driver window down to which he initially did not respond at all. Only after a hard knock on the window with a forceful order to roll the window down did the driver comply. Agents asked the driver, later identified as W.T., who the individuals in the vehicle were and he responded that he was told that he was to bring four people to the border and pick four people up from the border, but when he got to the border there were six people looking to be picked up. Agents asked if he had been paid yet for picking the people up and he responded "No. not yet". For investigative purposes, agents asked W.T. to step out of the Outback and W.T. was detained in the back of a marked Border Patrol service vehicle. Agents then asked the other occupants in the vehicle to state their citizenship. Three of the female individuals in the backseat claimed to be Haitian citizens -- later identified as Judith AUGUSTIN, Madeleine Na CHOULOUTTE, and S.C.C., -- and the male individual from the front seat, and the other adult and juvenile females in the back claimed to be from Colombia. The Columbians were a family of husband, wife and child, later identified as J.C.B.T., Y.A.G.R., and H.S.B.G. Agents then asked the passengers if they illegally crossed the border and got into Outback and all answered in the affirmative. While searching the passengers, Agents discovered large amounts of cash on each of the adults. Agents asked the individuals if that

*United States of America v* **Judith Augustin et al.**

was the money they planned to use to pay the smugglers and they all answered in the affirmative. Agents then asked W.T. to state his citizenship and he claimed to be a citizen of Haiti.

10.    At that time, all occupants from the Outback were placed under arrest and transported to the Burke Border Patrol Station for further interviews and processing.

11.    At the station, Agents confirmed that all occupants of the vehicle were illegally present.

12.    Judith AUGUSTIN and Madeleine Na CHOULOUTTE did not have any valid U.S. immigration documents allowing them to enter or remain in the United States legally. Records show that they have never applied, nor has anyone applied on their behalf, for any valid U.S. immigration documents allowing them to enter or remain in the United States legally. Nationals and Citizens of Haiti are required to apply for a visa if they seek to enter the United States. Haitian citizens who are issued a visa by the United States government are required to present the visa and the person's passport to an immigration official at a Port of Entry as he or she seeks admission into the United States.   Judith AUGUSTIN and Madeleine Na CHOULOUTTE do not possess a valid visa. If Judith AUGUSTIN and Madeleine Na CHOULOUTTE had presented themselves at a Port of Entry and asked permission to enter the United States, each of them would have been denied admission as they do not possess any valid United States visa.

## Conclusion

13    Based on the foregoing, I respectfully request the Court issue the proposed complaint charging the defendants with improper entry by an alien, in violation of 8 U.S.C. § 1325(a)(1).

*Andrew Kraengel* 6/1/2026 3:54 PM
Andrew L. Kraengel
United States Border Patrol

Attested to by the affiant in accordance with Rule 4.1
of the Federal Rules of Criminal Procedure.

Date: June 2, 2026

Hon. Gary L. Favro
United States Magistrate Judge